JACOB L. HAFTER, ESQ.
Nevada State Bar No. 9303
MICHAEL NAETHE, ESQ.
Nevada State Bar No. 11222
LAW OFFICE OF JACOB HAFTER & ASSOCIATES
7201 W. Lake Mead Boulevard, Suite 210
Las Vegas, Nevada 89128
Tel: (702) 405-6700
Fax: (702) 685-4184

Attorney for Relator

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. ERNEST M. SUSSMAN, M.D.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>LAS VEGAS UROLOGY, L.L.P., VICTOR E. GRIGORIEV, M.D., VICTOR E. GRIGORIEV, M.D., CHTD., VIJAY GOLI, MD., VIJAY GOLI, M.D., LTD., JEFFREY M. ZAPINSKY, M.D., JEFFREY M. ZAPINSKY, M.D., LTD., WILLIAM R. WISE, M.D., WILLIAM R. WISE, M.D, LTD., WILLIAM B. STEINKOHL, M.D., WILLIAM B. STEINKOHL, M.D., LTD., JOSEPH CANDELA, M.D., JOSEPH CANDELA, M.D., CHTD., STEVEN B. KURTZ, M.D., and, STEVEN B. KURTZ, M.D., CHTD.,<br><br>　　　　　Defendants. | Case No.: 2:10-cv-1019<br><br><br>**FILED UNDER SEAL** |

///
///
///
///
///
///
///

COMPLAINT - 1

## COMPLAINT

Plaintiff, Ernest M. Sussman, M.D., brings this action by qui tam in the name of the United States Government, and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the False Claims Act (FCA), as amended, 31 U.S.C. §3729, et. seq. The Court has subject-matter jurisdiction over this matter pursuant to 31 U.S.C. §3730 and, 28 U.S.C. §1331.

2. The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. §3732(a).

3. Venue is proper in this district under 28 U.S.C. §1391(b) and (c), because defendants can be found, reside, or transact business within this district and the acts prescribed by the FCA occurred within this district.

## PARTIES

4. The Relator, Ernest M. Sussman, M.D., brings this action under the Federal False Claims Act, 31 U.S.C. §§ 3729 et. seq., as amended, on behalf of the United States of America, arising out of Defendants' involvement in false claims and false statements made in connection with submission of medical billing for Medicare, Medicaid, TriCare and Federal Employee Health Benefit Program ("FEHB") patients receiving urologic care from the Defendants.  Relator Ernest M. Sussman, M.D., is a licensed physician in the State of Nevada and former member of the medical group, Las Vegas Urology, L.L.P. from November 24, 1998 though February 27, 2007.  A copy of the Relator's curriculum vitae is attached and incorporated herein as Exhibit 1.

5. Defendant, Las Vegas Urology, L.L.P. is a Nevada limited liability partnership with Nevada Business Identification, NV19981000336, consisting of the other named Defendants herein-below, and which does business in the State of Nevada,

specifically within Las Vegas, Nevada and is engaged in the business of providing health care services to individual patients.

6. Defendant, Victor E. Grigoriev, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

7. Defendant, Victor E. Grigoriev, M.D., Chtd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant Victor E. Grigoriev, M.D.

8. Defendant, Vijay Goli, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

9. Defendant, Vijay Goli, M.D., Ltd, is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant Vijay Goli, M.D.

10. Defendant, Jeffrey M. Zapinsky , M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

11. Defendant, Jeffrey M. Zapinsky, M.D., Ltd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant Jeffrey M. Zapinsky, M.D.

12. Defendant, William R. Wise, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

13. Defendant, William R. Wise, M.D., Ltd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant William R. Wise, M.D.

14. Defendant, William B. Steinkol, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

15. Defendant, William B. Steinkohl, M.D., Ltd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant William B. Steinkohl, M.D.

16. Defendant, Joseph Candela, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

17. Defendant, Joseph Candela, M.D.,Chtd., with full legal registered name as Joseph Vincent Candela, M.D., Chtd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant Joseph Candela, M.D.

18. Defendant, Steven B. Kurtz, M.D., is a licensed physician in the State of Nevada, and is a partner in Las Vegas Urology, L.L.P., and resides in the District of Nevada.

19. Defendant, Steven B. Kurtz, M.D.,Chtd., is a Nevada corporation and is a partner in Las Vegas Urology, L.L.P., and has a principal place of business within the District of Nevada and is solely owned by Defendant Steven B. Kurtz, M.D.

## OPERATION OF THE MEDICARE PROGRAM

20. Title XVII of the Social Security Act, 42 U.S.C. §1395 et seq., establishes the Health Insurance for the Aged and Disabled program, popularly known as Medicare.

21. Medicare is comprised of two principal parts. Part A of Medicare, which is not involved in this matter, provides hospitalization insurance for eligible individuals. 42 U.S.C. §§ 1395c - 13951. Part B of Medicare is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization, such as charges for medical care in physicians' offices. The Part B program covers only those services and procedures which have been determined to be medically reasonable and necessary.  42 U.S.C. §1395y(a)(1)(A). The Part B program requires beneficiaries to bear some of the cost of their care to prevent

overutilization, and, accordingly, Part B generally covers 80% of the reasonable charges as established by a physician fee schedule, with the patient responsible for the remaining 20%. 42 U.S.C. §13951(a)(1).

22. During the relevant time period, physicians and other health care providers who provided services to Medicare Part B beneficiaries presented a claim for reimbursement to the United States by presenting the claim to the appropriate Medicare carrier, which acted as the agent of the Secretary of HHS. The claim was presented using Form HCFA/CMS 1500, either by mail or electronically. The claim was paid by the Medicare carrier directly from the United States Treasury. Each HCFA/CMS 1500 detailed the provider's identifying information, the date and type of service, procedure, or supplies provided, the diagnosis of the patient, and the amount of reimbursement sought. Providers who submitted claims using Form HCFA/CMS 1500 or its electronic equivalent affirmatively certified that the services described were actually performed by the submitting provider and were medically indicated and necessary.

23. Regulations adopted by the Centers for Medicare and Medicaid Services (CMS), formerly known as the Health Care Financing Administration (HCFA), a sub-department of HHS, require that the description of a provider's service and procedures must be entered on Form HCFA/CMS 1500 or its equivalent by using procedure codes published by the American Medical Association, known as the Physicians' Current Procedural Terminology (CPT). Additionally, a provider must maintain detailed medical record documentation as to any consults, office visits, and procedures to assist the provider in designating a CPT code.

**OPERATION OF THE MEDICAID PROGRAM**

24. Title XIX of the Social Security Act, 42 U.S.C. §1396-1 et seq., establishes the Grants to States for Medical Assistance program, popularly known as Medicaid.

COMPLAINT - 5

25. The United States of America jointly funds the Medicaid program with the State of Nevada. The State of Nevada administers the program while CMS monitors the state-run program and establishes requirements for service delivery, quality of care, funding and eligibility standards.

26. During the relevant time period, physicians and other health care providers who provided services to Medicaid beneficiaries presented a claim for reimbursement to the United States by presenting the claim to the appropriate Medicaid fiscal agent designated by the State of Nevada, which acted as the agent of the Secretary of HHS. The claim was presented using Form HCFA/CMS 1500, either by mail or electronically. The claim was paid by the Medicaid fiscal agent indirectly from the United States Treasury. Each HCFA/CMS 1500 detailed the provider's identifying information, the date and type of service , procedure, or supplies provided, the diagnosis of the patient, and the amount of reimbursement sought. Providers who submitted claims using Form HCFA/CMS 1500 or its electronic equivalent affirmatively certified that the services described were actually performed by the submitting provider and were medically indicated and necessary.

27. Regulations adopted by the Centers for Medicare and Medicaid Services (CMS), formerly known as the Health Care Financing Administration (HCFA), a sub-department of HHS, require that the description of a provider's service and procedures must be entered on Form HCFA/CMS 1500 or its equivalent by using procedure codes published by the American Medical Association, known as the Physicians' Current Procedural Terminology (CPT). Additionally, a provider must maintain detailed medical record documentation as to any consults, office visits, and procedures to assist the provider in designating a CPT code.

## OPERATION OF THE TRICARE PROGRAM

28. TriCare is a federally funded medical insurance program for military personnel, retirees, their spouses and unmarried dependent children under the age of 22,

COMPLAINT - 6

administered by TMA, formerly known as the Office of Civil Health and Medical Program of the Uniformed Services, pursuant to 10 U.S.C. § 1071- 1107. TriCare was established by Title 10, U.S.C. Chapter 55 (formerly known as CHAMPUS), and operates in accordance with policies and procedures set forth in the Department of Defense TriCare regulation 6010.8-R, 32 C.F.R. Part 199.

29. Subject to all applicable definitions, conditions, limitations and exclusions found in 32 C.F.R. Part 199, medically necessary services and supplies required in the diagnosis and treatment of illness or injury are reimbursable under the TriCare Program. The physician seeking reimbursement has an obligation to provide services and supplies which are:

   a. furnished at the appropriate level and only when and to the extent medically necessary.  32 C.F.R. § 199.9(b);

   b. of a quality that meets professionally recognized standards of health care. Id.; and,

   c. supported by adequate medical documentation as may reasonably be required to evidence the medically necessary and quality of services provided, as well as the appropriate level of care. Id.

30. The physician providing services and asking for TriCare reimbursement has a further obligation not to:

   a. submit claims for non-covered costs or non-chargeable services disguised as covered. 32 C.F.R. § 199.9 (c)(2);

   b. submit claims which involve flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, medical needs, or the physician's orders. 32 C.F.R. § 199.9 (c)(5);

   c. submit claims which are false or fictitious, or include or are supported by any written statement which asserts a material fact which is false or fictitious, or include or are supported by any written statement that omits a material fact

COMPLAINT - 7

1  which the provider had a duty to include and the claim is false or fictitious as a
2  result of such omission. 32 C.F.R. § 199.2.
3  31.  TriCare contracts with private insurance companies to help administer the TriCare Program., particularly in processing and paying claims. Such organizations are known as TriCare contractor.
4  32.  During the relevant time period, physicians and other health care providers who provided services to TriCare beneficiaries presented a claim for reimbursement to the United States by presenting the claim to the appropriate contractor, which acted as the agent of the Secretary of DOD. The claim was presented using Form HCFA/CMS 1500, either by mail or electronically. The claim was paid by the TriCare contractor directly from the United States Treasury. Each HCFA/CMS 1500 detailed the provider's identifying information, the date and type of service, procedure, or supplies provided, the diagnosis of the patient, and the amount of reimbursement sought. Providers who submitted claims using Form HCFA/CMS 1500 or its electronic equivalent affirmatively certified that the services described were actually performed by the submitting provider and were medically indicated and necessary.
5  33.  Regulations adopted by the TMA, a sub-department of DOD, require that the description of a provider's service and procedures must be entered on Form HCFA/CMS 1500 or its equivalent by using procedure codes published by the American Medical Association, known as the Physicians' Current Procedural Terminology (CPT). Additionally, a provider must maintain detailed medical record documentation as to any consults, office visits, and procedures to assist the provider in designating a CPT code.

**OPERATION OF THE FEDERAL EMPLOYEES HEALTH BENEFIT PROGRAM**

34.  The Federal Employee Health Benefit Act, 5 U.S.C. §§ 8901, et seq, a comprehensive program to provide federal employees and retirees, their spouses

and unmarried dependent children under the age of 22 with subsidized health care benefits, known as The Federal Employee Health Benefit Program (FEHB).

35. The United States Office of Personnel Management (OPM) administers the FEHB program by contracting with various health insurance carriers to develop health care plans with varying coverages and costs. OPM collects federal employees' premiums and makes payment to FEHB contractors through the Federal Employee Health Benefit Fund ("Health Fund"), a part of the United States Treasury.  5 U.S.C. § 8909.

36. Health care providers who seek reimbursement from the FEHB program health care plans typically utilize HCFA/CMS Form 1500, using the CPT procedure codes described above.

37. Providers who submitted claims using Form HCFA/CMS 1500 or its electronic equivalent affirmatively certified that the services described were actually performed by the submitting provider and were medically indicated and necessary.

38. Like Medicare, Medicaid and TriCare, FEHB will not reimburse a health care provider as to any service,  item, drug or supply that is not in compliance with program contract participation regulations.

39. Medicare, Medicaid and TriCare, and FEHB programs are collectively referred to herein as the federal health care benefit programs

**FACTUAL ALLEGATIONS**

40. During the period from January 1, 2005 through December 31, 2007, Defendants performed services for federal health care program beneficiaries but prepared or caused to be prepared materially false or fraudulent records or statements, and presented or caused to be presented to the United States materially false or fraudulent claims for reimbursement, as described in the following paragraphs.

41. The Relator first discovered the fraudulent practices alleged in this Complaint while serving as a partner in Defendant Las Vegas Urology, L.L.P. as a physician

COMPLAINT - 9

practicing in the medical group comprised of the other Defendants from January 2005 to February 2007. The Relator has attached his Relator Statement, as Exhibit 2, and all statements made therein are incorporated herein as part of the factual allegations.

42. Based on personal knowledge including observation of actions and comments by Defendant Joseph Candela, M.D., the Relator is informed and believes, and on such information and belief avers the presentation of false claims for payment to the government and/or making and using false records and statements to support such false claims for payment and/or making and using false records or statements to get false or fraudulent claims paid or approved, and/or in making, using or causing to be made or used, a false record or statement to conceal, avoid or decrease an obligation to payor transmit money or property to the United States of America all in violation of the False Claims Act, 31 U.S.C.A. § 3729 et. seq.

43. With details from personal observations of the medical group electronic medical records system, and discussion with medical staff and discussions with Defendant Vijay Goli, M.D., the Relator, Ernest M. Sussman, M.D., discovered that certain regulations and participation directives with respect to the Defendants' actions in receiving compensation for services performed on beneficiaries of Medicare, Medicaid TriCare and FEHP programs were systematically being ignored by the Defendants or not implemented by them in order for each of them to derive substantial sums from the United States of America.

44. During the relevant time period, according to the CPT Handbook, CPT code 57288 is used when a surgeon uses the AMS Bio Arc kit which incorporates the dermis in the prolene sling kit. This prolene sling kit with dermis incorporated does not require any additional work, other than attaching the sling. There is no separate procedure involved in attaching the vaginal mesh because it comes as part of the sling. A physician can only bill the vaginal mesh separately if it is used to reinforce a cystocele or a rectocele repair. The prolene sling is a long piece of "tape" applied

|   |   |
|---|---|
|  | under the urethra like a hammock and is used to treat urinary incontinence. The AMS kit has a piece of graft (from a pig or some other non-reactive material) which is already a part of the tape. CPT code 57267 is the procedure code for insertion of mesh or other prosthesis for repair of pelvic floor defect, each site (anterior, posterior compartment), vaginal approach [list separately in addition to code for primate procedure] (use CPT code 57267 in addition to CPT codes 45560, 57240-57265). CPT code 57288 is the code for a sling operation for urinary stress incontinence (e.g. fascia or synthetic). |
| 45. | It is appropriate to bill CPT code 57288 for ICD-9 625.6, but adding CPT code 57267 is fraudulent when using tape with mesh/graft incorporated. |
| 46. | During the relevant time period, the Relator personally observed that Defendant Vijay Goli, M.D. had utilized CPT code 57267 (vaginal mesh) in conjunction with a sling (CPT code 57288) when Relator reviewed the operating notes of patients and confirmed coding data designated by Vijay Goli, M.D. after reviewing the medical group's printout of charges that were submitted to the federal health care entitlement programs. |
| 47. | During the relevant time period, Medicare Post-Voiding Residuals (PVRs) prohibited billing Medicare CPT code 76856 (Ultrasound, Pelvis) when using a bladder scanner, when appropriate code for scanning the bladder in order to determine urine retention is CPT code 51798. |
| 48. | In many instances, there was billing done by the Defendants under CPT code 76856 (Ultrasound, pelvic (non-obstetric) real time with image documentation; complete). When using scanner to determine urine retention, the proper code is CPT code 51798 (measurement of PVR urine and/or bladder capacity by ultrasound, non-imaging) as used by the Medicare PVRs. |
| 49. | Based on Relator's knowledge, skills and abilities in the delivery of urologic health services, and in review of the medical records of the medical group, if his Partners (the individually named Defendants) were performing an ultrasound of the pelvis, |



7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

        they would be performing a study of each pelvic organ.  If a female patient, the records would reveal a total examination of the female pelvic anatomy, which would include; bladder measurement, description and measurement of the uterus and adenexa, description of pelvic pathology, and a measurement of the endometrium. If a male patient, total examination of the male pelvis would include; bladder measurement, description of pelvic pathology and other pertinent measurements.  In review of the medical records of the medical group by the Relator,  the only finding documented was the amount of residual urine in the bladder.  Additionally, pelvic ultrasound either in a male or female patient was a common study undertaken in the urology practice.

50. During the relevant time period, billing CPT code 52204 together with CPT  code 52214 -59 modifiers on the same patient is prohibited.

51. CPT code 52204 (Cystourethroscopy with biopsy(s))  consists of a cystoscope being inserted through the urethra into the bladder and an instrument is then inserted through the cystoscope under direct vision to take samples of bladder tissue.

52. Based on personal obeservation of the Relator, Defendants  Zapinsky, Steinkohl, and Wise had brought this form of billing into the Partnership utilizing CPT codes 52204 through 52234, which are more aggressive procedures (Cystourethroscopy with fulguration (including cryosurgery or laser surgery)  based on size of tumor, where the surgeon would use a different instrument to shave tumor tissue away to the bladder surface or below the bladder surface of the internal covering of the bladder wall when CPT codes 52204, 52224, 52234, 52235 are used in conjunction with 52214 and a -59 modifier is "tacked on" to the other procedures.  This means the urologic surgeon performed a separate identifiable procedure of the bladder wall or prostate, when in reality it is essentially the same procedure where only one of the CPT codes is necessary.

53. The Relator's review of the documentation on the electronic medical record system did not support billing CPT code 52204, or 52224 thru 52235, inclusive, with CPT

code 52214-59 modifier "tacked-on." The Partners in question would have had to be performing an entirely different procedure through the cystoscope, at the same time as the primary procedure; thus an entirely separate procedure would have had to be performed, taking separate biopsies or performing surgery on two (2) different sites or prostate, where one (1) code would be sufficient.

54. During the relevant time period, billing CPT code 9924_ (office) consultation (last digit intentionally left blank) when the patient was referred by an emergency room physician, not via request for a consult addressed to the particular physician or practice, rather than appropriate CPT code 99201-99205 (new patients office or outpatient services) is prohibited under federal health care program directives.

55. Relator had personally observed Defendant Vijay Goli directing the office personnel to generate a fraudulent "dummy" letter to ER physicians in order to create the appearance that the ER physician had in fact referred the patient to Dr. Goli to the office for a consultation, when in fact, the ER physician had not made such a referral, and just said to the patient "go see a urologist." [See Pages 7 and 8 of Relator's Statement at Exhibit 2 attached hereto].

56. CPT code 9924_ (office) (last digit intentionally left blank) was utilized and billed to the federal health care entitlement programs by Dr. Goli to give the appearance to the federal health care entitlement programs that the ER physician was actually a primary care physician that requested a consultation; thus entitling the Defendants to a higher reimbursement rate, when the patient was actually being presented to Dr. Goli as a "new patient" (CPT code 99201-99205 (new patients office or outpatient services) ).

57. During the relevant time period, ordering and billing "Advanced Urodynamics" when not warranted by the patient's physical findings and history is prohibited.

58. Urodynamics test is performed on both male and female patients in order to assess bladder function, which has two components: filling and emptying the bladder. CPT

COMPLAINT - 13

    code 51726 is to be utilized for Level ; 51726 + 51795 for Level 2; and, 51726 + 51795 + 51784 for Level 3.

59. The Relator personally observed, by reviewing the patient records of Dr. Goli and Dr. Grigoriev with respect to urodynamics testing. Dr. Goli and Dr. Grigoriev would order such urodynamic testing for a pateint with simple incontinence and would submit billings at Level 2 and Level 3.  Additionally, the Relator would hear the office staff make jokes and laugh at the amount of urodynamic testing that both physicians would order.

60. During the relevant time period, billing a CPT code 52000 for cystourethroscopy procedures is appropriate where the urologist was merely looking at the bladder through the urethra (and for males viewing the prostate along the way); it is inappropriate for a physician to utilize  CPT code 52281 (Cystourethroscopy, with calibration and/or dilation of structure or stenosis, with or without meatotomy, with or without injection procedure for cystography, male or female) where the urologist does not document why the physician can not pass the cystoscope through the uretha or in a female patient with documented obstructive voiding symptoms.

61. The Relator conducted a personal review of the electronic medical records and observed that Dr. Goli performed the cystourethroscopy procedure at least 5 times per week and billed CPT code 52281 where and no documentation existed such that CPT code 52000 should have been utilized.

62. During the relevant time period, the individually named Defendants had access to the Las Vegas Urology, L.L.P. electronic medical records system and billing records. The Defendants, by virtue of their respective, unfettered access to the medical records and billing records knew or should have known about the lack of documentation and support of medical necessity for the above stated procedures in the patient encounter notes by any other physician in the medical group.

63. During the relevant time period, the individually named Defendants knew or where aware of the Relator's complaints and concerns as outlined in his Relator Statement

COMPLAINT - 14

1 and did not undertake any remedial action including making a disclosure to the
2 respective carriers or inspector generals of any of the federal health care benefit
3 entitlement programs at anytime.

## FIRST CLAIM FOR RELIEF
### False Claims Act

64. The Relator adopts and incorporates by reference the allegations of paragraphs 1 through 63 as though set forth fully herein.

65. During the period from January 1, 2005 through December 31, 2007, Defendants violated the False Claims Act, 31 U.S.C. §3129(a) (1), (a)(2) and (a)7, by knowingly, presenting or causing to be presented materially false or fraudulent claims to the Government for payment for various urologic procedures; knowingly making and using or causing to be made and used, materially false or fraudulent records or statements to get the False Claims paid (the False Records or Statement); and knowingly makes, uses , or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. The False Claims were as follows:

   a. Up-coding by billing CPT code 57267 (vaginal mesh) in conjunction with a sling (CPT code 57288).

   b. Up-coding by billing CPT code 76856 (Ultrasound, Pelvis) when using a bladder scanner, when appropriate code for scanning the bladder in order to determine urine retention is CPT code 51798.

   c. Up-coding by billing CPT code 52205 together with CPT code 52214-59 modifiers on the same patient.

   d. Up-coding by billing CPT code 9924_ (office) consultation (last digit intentionally left blank) when the patient was referred by an ER physician, not via request for a consult addressed to the particular physician or practice, rather

COMPLAINT - 15

       than appropriate CPT code 99201-99205 (new patients office or outpatient services).

    e. Up-coding where advanced urodynamics testing was ordered and billed when not warranted by the patient's physical findings and history.

    f. Up-coding on cystourethroscopy procedures were either medically unnecessary or billing CPT code 52281 when CPT code 52281 should have been utilized.

    g. Failure to comply with program directives with systemic failure to document examination of patients in the record.

66. The False Claims were materially false or fraudulent because the Defendants either with actual knowledge of the falsity, or in deliberate ignorance of the falsity, or in reckless disregard of the falsity, certified or caused to be certified on Form HCFA/CMS 1500 or its equivalent that the services described were medically appropriate, when the Defendants either actually knew, or acted in deliberate ignorance of the fact, or acted in reckless disregard of the fact, that the services described were not medically appropriate.

67. The False Records or Statements were materially false because Defendants either knowingly falsely, or in deliberate ignorance of the truth, or in reckless disregard of the truth, recorded or stated that the services described were medically appropriate, when the Defendants either actually knew, or acted in deliberate ignorance of the fact, or acted in reckless disregard of the fact, that the services described were not medically appropriate.

68. Defendants intended the False Claims and the False Records or Statements to be material and to be relied upon, and they were essential to Defendants' fraudulent scheme, because the False Claims and the False Records and Statements were necessary to support the payment or approval of the False Claims by the Government of the United States of America.

69. Defendants intended the False Records and Statements in order to conceal, avoid, or decrease an obligation to pay or transmit money to the Government of the Untied States of America.

70. The United States of America was damaged by the Defendants' actions because payments were made to the Defendants from the United States Treasury by the Government on the basis of the False Claims or the False Records or Statements that would not have been made in the absence of Defendants' False Claims or the False Records or Statements.

## JURY DEMAND

The Relator, Ernest M. Sussman, M.D., demands a trial by jury on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE,** the Relator requests the Court to enter judgment in favor of the United States of America and against Defendants and to order the following relief:

1. Triple amount of the United States' proven damages under the False Claims Act;
2. Civil penalties as required by the False Claims Act;
3. That in the event that the United States Government continues to proceed with this action, Relator be awarded an amount for bringing this action of at least fifteen (15%) but not more than twenty-five percent (25%) of the proceeds of the action or settlement of the claim; or that in the event that the United States Government does not proceed with this action, Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than twenty-five percent (25%) but not more than thirty (30%) of the proceeds of the action or settlement of the claim.
4. That the Relator be awarded all costs incurred, including reasonable attorney's fees;
5. Such further relief as the Court deems just and proper.

Respectfully submitted this 25th day of June, 2010.

          LAW OFFICES OF JACOB HAFTER & ASSOCIATES

By _____
    JACOB L. HAFTER, ESQ.
    Nevada Bar No. 9303
    MICHAEL K. NAETHE, ESQ.
    Nevada Bar No. 11222
    7201 W. Lake Mead Blvd, Ste 210
    Las Vegas, Nevada 89128
    Ph: (702) 405-6700
    Fax: (702) 685-4184
    jhafter@hafterlaw.com
    *Attorneys for Relator (Local Counsel)*

*and*

[Pending Pro Hac Vice admission]
RAPPEL HEALTH LAW GROUP, P.L.

By    /s/ Craig Rappel
    CRAIG M. RAPPEL
    Florida Bar No.: 0752428
    D.C. Bar No.: 484208
    S.R.A. No.: 492691
    1515 Indian River Boulevard, Suite A210
    Vero Beach, Florida 32960
    Ph: (772) 778-8885
    Fax: (772) 778-8883
    cmr@rappelhealthlaw.com
    *Attorneys for Relator (Lead Trial Counsel)*

COMPLAINT - 18